1                    UNITED STATES DISTRICT COURT

2                  SOUTHERN DISTRICT OF CALIFORNIA

3

4  UNITED STATES OF AMERICA,      ) Case No. 08CR2386-JM
                                  )
5            Plaintiff,           ) San Diego, California
                                  )
6  vs.                            ) Friday,
                                  ) August 5, 2008
7  KRAPCHAN, et al.,              ) 9:00 a.m.
                                  )
8            Defendants.          )
   _____)
9

10              TRANSCRIPT OF CHANGE OF PLEA HEARING
               BEFORE THE HONORABLE NITA L. STORMES
11                UNITED STATES MAGISTRATE JUDGE

12  APPEARANCES:

13  For the Plaintiff:            ORLANDO GUTIERREZ, ESQ.
                                  Assistant United States
14                                  Attorney
                                  880 Front Street
15                                San Diego, California 92101

16  For the Defendant:            THOMAS J. WARWICK, ESQ.
                                  Grimes & Warwick
17                                2664 Fourth Avenue
                                  San Diego, California 92103
18                                (619) 232-0600

19  Transcript Ordered by:        ORLANDO GUTIERREZ, ESQ.

20  Transcriber:                  L. L. Francisco
                                  Echo Reporting, Inc.
21                                6336 Greenwich Drive, Suite B
                                  San Diego, California 92122
22                                (858) 453-7590

23

24

25  Proceedings recorded by electronic sound recording;
   transcript produced by transcription service.

1

1   SAN DIEGO, CALIFORNIA, FRIDAY, AUGUST 5, 2008, 9:00 AM

2                        --oOo--

3      (Call to order of the Court.)

4           THE CLERK:  Calling matter 6 and 7 off the

5   calendar.  Case Number 98CR2340-BTM, United States versus

6   Jose Carlos Aragon Carona (phonetic) and Case Number

7   08CR2386 United States versus Hassan Shirani both on

8   calendar for change of plea hearing.

9      (Pause while the Court heard other matters.)

10          MR. WARWICK:  Good morning, your Honor, Tom

11  Warwick on behalf of Mr. Shirani who is present before the

12  Court.

13          THE COURT:  Good morning.

14          MR. GUTIERREZ:  Orlando Gutierrez on behalf of the

15  United States for Mr. Shirani's case, your Honor.

16          THE COURT:  Good morning.

17          MR. GUTIERREZ:  Your Honor, if I may make a

18  request before we start?

19          THE COURT:  All right.

20          MR. GUTIERREZ:  With regard to Mr. Shirani's plea

21  agreement.  He signed this plea agreement before a deadline

22  before the indictment was returned.  So the case numbers

23  indicated on the plea agreement are an MJ case number.  He

24  is currently under indictment under 08CR2386.  It's the

25  party's intention rather than to have him execute an

2

1  identical plea agreement that he would just interlinerate

2  the sections that have an old case number reference

3  specifically on page two.  It is the same exact charge.  The

4  only difference is the page number is different.  So it

5  would be the party's intent that this plea agreement is

6  still binding.  And it would be applicable to the

7  indictment, as it would the complaint, and we would like to

8  go forward if the Court would allow with this.

9          THE COURT:  Well it's been interlineated on the

10  original plea agreement with the new criminal case number.

11  And it is the desire of counsel that this plea agreement,

12  which contains the magistrate judge number be applied in the

13  newly indicted case 08CR2386, that's correct?

14          MR. GUTIERREZ:  That would be our intention, your

15  Honor.

16          MR. WARWICK:  That is correct on behalf of Mr.

17  Shirani, your Honor.

18          THE COURT:  All right.

19          MR. GUTIERREZ:  Thank you, your Honor.

20          THE COURT:  You're welcome.

21          Mr. Perrault, would you please place each of these

22  gentlemen under oath.

23          HASSAN SHIRANI - DEFENDANT - SWORN

24      (Pause while the Court heard other matters.)

25          THE COURT:  Good morning, gentlemen.  Has either

3

1  of you taken any drugs or other medications that would

2  interfere with your ability to understand the Court

3  proceedings this morning, Mr. Shirani?

4          THE DEFENDANT:  No.

5      (Pause while the Court heard other matters.)

6          THE COURT:  If at any time during this proceeding

7  you don't understand something I say, will you let me know

8  that so I can clarify it for you, Mr. Shirani?

9          THE DEFENDANT:  Yes.

10     (Pause while the Court heard other matters.)

11         THE COURT:  You both understand that you do have

12 the right to appear before the district judge in your case,

13 who is also the sentencing judge, in order to enter your

14 guilty plea, MR. Shirani?

15         THE DEFENDANT:  Yes.

16     (Pause while the Court heard other matters.)

17         THE COURT:  And both of you agree to give up that

18 right and enter your guilty plea before me a magistrate

19 judge, Mr. Shirani?

20         THE DEFENDANT:  Yes.

21     (Pause while the Court heard other matters.)

22         THE COURT:  I'm now going to advise you of your

23 constitutional rights.  You have the right to persist in

24 your plea of not guilty.  You have the right to a speedy and

25 public trial.  You have the right to be tried by a jury, or

4

1 you could give up that right and agree to be tried by a

2 judge.  You have the right to assistance of counsel

3 throughout the proceedings including at trial.  If you

4 cannot afford to pay an attorney to represent you at trial,

5 appointed counsel will represent you throughout the trial at

6 no cost to you.  You have the right to confront and cross

7 examine witnesses who would testify against you.  You have

8 the right to present a defense and subpoena witnesses to

9 court to testify in your behalf.  You also have the right

10 against compelled self-incrimination.  Meaning that you

11 cannot be forced to testify at any hearing, or at trial, and

12 the Government cannot comment on your silence.  Does each of

13 you understand the constitutional rights that I've just

14 described to you, Mr. Shirani?

15          THE DEFENDANT:  Yes.

16      (Pause while the Court heard other matters.)

17          THE COURT:  If you plead guilty to the charge

18 against you, there will be no trial and you will be giving

19 up the constitutional rights that I've just described with

20 the exception of the right to continued assistance of trial.

21 Does each of you understand and agree to give up those

22 rights, Mr. Shirani?

23          THE DEFENDANT:  Yes.

24      (Pause while the Court heard other matters.)

25          THE COURT:  All right.  Mr. Shirani, the charge in

5

count one of the indictment is that beginning on a date
unknown and continuing up to and including June 13, 2008
within the Southern District of California, you along with
co-defendants Michael Krapchan and Ryan Wedding, knowingly
and intentionally conspired to possess with intent to
distribute more than five kilograms of cocaine.

If you were to go to trial on this charge, the
Government would have to prove the following elements of the
crime beyond a reasonable doubt. One, that there was an
agreement between at least two persons to distribute
cocaine.

Two, that you became a member of the conspiracy
knowing of one of its objects and intending to help
accomplish it. If you plead guilty to the charge, you will
be admitting each of those elements. Do you understand
that, sir?

THE DEFENDANT: Yes.

(Pause while the Court heard other matters.)

THE COURT: All right, gentlemen, I'm now going to
advice you of the maximum penalties that are associated with
the charge against each of you.

Mr. Shirani, in your case the maximum prison term
is a maximum life in prison with a minimum mandatory term of
ten years. There is a maximum fine of $4,000,000, a
mandatory special assessment of $100, a term of supervised

6

1 release of five years, but no more than five years, and a

2 forfeiture of all conveyances used in connection with the

3 offense, all property that constitutes or is derived from or

4 traceable to proceeds obtained from commission of the

5 offense and all real property or personal property used to

6 facilitate the commission of the offense.  Do you understand

7 the maximum penalties you face if you plead guilty to count

8 one of the indictment, sir?

9          THE DEFENDANT:  Yes.

10      (Pause while the Court heard other matters.)

11          THE COURT:  Gentlemen, what this supervised

12 release provision means in each of your cases is that after

13 you served a prison term and you're released from prison,

14 you still have to comply with certain conditions that are

15 imposed by the sentencing judge.  If at any time during the

16 period of your supervised release you have found to have

17 violated the conditions of your supervised release, then you

18 can be returned to prison in Mr. Shirani's case for a period

19 of up to five years.  And in Mr. Aragon's case for a period

20 up to one year.  And that would be in addition to the time

21 you had already spent in prison on the original charge.

22 Does each of you understand that, Mr. Shirani?

23          THE DEFENDANT:  Yes.

24      (Pause while the Court heard other matters.)

25          THE COURT:  I also need to advise you that if you

7

1   were currently on probation, parole or supervised release --

2   Mr. Shirani, I need you to listen to me when I'm talking

3   here, all right.  Now, I need to advice you that if you are

4   currently on probation, parole or supervised release from a

5   separate criminal case, your guilty plea in this case would

6   trigger a violation of that status.  Does each of you

7   understand that, Mr. Shirani?

8           THE DEFENDANT:  Yes.

9       (Pause while the Court heard other matters.)

10          THE COURT:  I also need to advise you that if

11  there are criminal charges presently pending against you in

12  a separate criminal case, the sentencing judge in this case

13  does not have the authority to order that the sentence in

14  this case run concurrently with any separate criminal

15  sentence that might be imposed in a different criminal case.

16  Does each of you understand that, Mr. Shirani?

17          THE DEFENDANT:  Yes.

18      (Pause while the Court heard other matters.)

19          THE COURT:  Now, Mr. Shirani, are you a United

20  States citizen?

21          THE DEFENDANT:  No.

22          THE COURT:  You understand then that as a result

23  of your guilty plea and after you serve a prison sentence in

24  your case, you will be deported from the United States?

25          THE DEFENDANT:  Yes.

8

1          (Pause while the Court heard other matters.)

2          THE COURT:  Now, the precise sentence in each of

3   your cases will be determined by the sentencing judge after

4   he consults the sentencing guidelines.

5          Has each of you had an opportunity to speak with

6   your attorney about how the sentencing guidelines might

7   apply to you, Mr. Shirani?

8          THE DEFENDANT:  Yes.

9          (Pause while the Court heard other matters.)

10         THE COURT:  I need to caution you that the

11  sentencing guidelines are advisory only.  Meaning that the

12  sentencing judge is not required to follow them.  Therefore,

13  the sentencing judge could impose the maximum statutory

14  sentence in each of your cases even if the sentencing

15  guidelines advise something less than that.  Does each of

16  you understand that, Mr. Shirani?

17         THE DEFENDANT:  Yes.

18         (Pause while the Court heard other matters.)

19         THE COURT:  Neither your attorney nor the Court

20  can tell you today the precise sentence that will be imposed

21  by the sentencing judge.  If the sentence you receive is

22  more severe than what you expected, you will still be bound

23  by your guilty plea.  While you might have the right to

24  appeal your sentence, you will not have the right to

25  withdraw your guilty plea.  Does each of you understand

9

1  that, Mr. Shirani?

2          THE DEFENDANT:  Yes.

3      (Pause while the Court heard other matters.)

4          THE COURT:  Now do you have the right to appeal

5  any sentence that is imposed by the Court unless you give up

6  that right as part of your plea agreement with the United

7  States Government.

8          I have been handed a written plea agreement in

9  each of your cases.  And I will ask counsel first for Mr.

10 Shirani whether this plea agreement and its addendum are the

11 entire agreement between the parties?

12         MR. WARWICK:  Yes, your Honor, as to both.

13     (Pause while the Court heard other matters.)

14         THE COURT:  Mr. Shirani, in the lower right hand

15 corner of each page of the plea agreement, and when I refer

16 to plea agreement I will be referring to the plea agreement

17 and its addendum, I see in the lower right hand corner the

18 initials H.S., those are your initials, sir?

19         THE DEFENDANT:  Yes.

20         THE COURT:  And do your initials on each page of

21 the plea agreement signify that you read that page, or had

22 it read to you, and understood its contents?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Did you have an opportunity to review

25 the entire plea agreement with your attorney before you

10

1  signed it on the last page?

2          THE DEFENDANT:  Yes.

3          THE COURT:  And this is your signature on the last

4  page of the main plea agreement and on the addendum?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And do you have any questions that you

7  want to ask the Court about the terms of your written plea

8  agreement?

9          THE DEFENDANT:  No.

10          THE COURT:  And are you satisfied with the

11  services of your attorney?

12          THE DEFENDANT:  Yes.

13      (Pause while the Court heard other matters.)

14          THE COURT:  Gentlemen, I do want to discuss one

15  provision that appears in each of your plea agreements with

16  you.  It's entitled "Defendant Waives Appeal and Collateral

17  Attack."  I want to make sure that each of you understands

18  what those terms mean.

19          To appeal your conviction or sentence, means to

20  appeal the result to a higher court.  To collaterally attack

21  your conviction or sentence means to challenge their

22  validity in any kind of future proceeding whether it's a

23  criminal proceeding, a civil proceeding or even an

24  administrative proceeding.  Does each of you understand what

25  those terms mean, Mr. Shirani?

11

1          THE DEFENDANT:  Yes.

2      (Pause while the Court heard other matters.)

3          THE COURT:  In each of your plea agreements it

4   provides that in return for the Government's concessions in

5   the plea agreement you waive to the full extent of the law

6   any right to appeal or collaterally attack the conviction

7   and sentence unless the Court were to impose a prison

8   sentence greater than the high end of the guideline range

9   that's recommended by the Government at the time of

10  sentencing.  If the sentence you receive is greater than the

11  high end of the guideline range then you can appeal it.  But

12  the Government will be free to support on appeal the

13  sentence that is actually imposed.

14          If you believe the Government's sentencing

15  recommendation is not in accordance with your plea

16  agreement, you have to object at the time of sentencing

17  otherwise your objection will be deemed waived.

18          Does each of you understand and agree to this

19  provision on waiver of appeal and collateral attack, Mr.

20  Shirani?

21          THE DEFENDANT:  Yes.

22      (Pause while the Court heard other matters.)

23          THE COURT:  And, counsel, has each of you

24  discussed the written plea agreement in its entirety with

25  your client including the provisions on waiver of appeal and

12

1    collateral attack?

2           MR. WARWICK:  Yes, your Honor.

3       (Pause while the Court heard other matters.)

4           THE COURT:  And in each of your opinions, does

5    your client understand the plea agreement in its entirety?

6           MR. WARWICK:  Yes, your Honor.

7       (Pause while the Court heard other matters.)

8           THE COURT:  All right.  Then, gentlemen,

9    considering the potential penalties you can receive and the

10   other consequences of the guilty plea I have discussed this

11   morning, do you still want to give up the constitutional

12   rights I told you about earlier and enter a guilty plea to

13   the charge against you, Mr. Shirani?

14          THE DEFENDANT:  Yes.

15      (Pause while the Court heard other matters.)

16          THE COURT:  Did anybody promise you anything other

17   than what's contained in your written plea agreement in

18   order to get you to plead guilty, Mr. Shirani?

19          THE DEFENDANT:  No.

20      (Pause while the Court heard other matters.)

21          THE COURT:  Did anybody threaten you in order to

22   get you to plead guilty, Mr. Shirani?

23          THE DEFENDANT:  No.

24      (Pause while the Court heard other matters.)

25          THE COURT:  I'm going to read the charge to you

13

1  and ask you how you plead.  And then I'm going to ask you

2  some questions about the underlying facts.  And I need to

3  caution you that if you were to give a false answer to any

4  question I ask you could later be prosecuted for making a

5  false statement.  Does each of you understand that, Mr.

6  Shirani?

7          THE DEFENDANT:  Yes.

8      (Pause while the Court heard other matters.)

9          THE COURT:  Mr. Shirani, the charge in count one

10  is that beginning on a date unknown and continuing up to

11  June 13, 2008 within the Southern District of California and

12  elsewhere Defendant Michael Krapchan, Hassan Shirani and

13  Ryan Wedding did knowingly and intentionally conspire and

14  agree with each other and others known and unknown to

15  possess with intent to distribute and to distribute five

16  kilos and more of cocaine, a schedule two controlled

17  substance, in violation of Title 21 United States Code

18  Sections 841(a) and 846.  How do you plead to that charge,

19  sir, are you guilty or not guilty?

20          THE DEFENDANT:  Guilty.

21      (Pause while the Court heard other matters.)

22          THE COURT:  Mr. Shirani, is it true that in

23  furtherance of the conspiracy charged in the indictment, on

24  or about June 13, 2008 you traveled to the Southern District

25  of California with your co-defendant Ryan Wedding for the

14

1   purpose of purchasing 24 kilos of cocaine?

2          THE DEFENDANT:  Yes.

3          THE COURT: And is it further true that this drug

4   purchase was previously brokered by your co-defendant

5   Michael Krapchan?

6          THE DEFENDANT:  Yes.

7          THE COURT: And is it further true that in

8   furtherance of the conspiracy on June 13, 2008 within the

9   Southern District of California you and your co-defendant

10  Ryan Wedding together possessed $117,000 in U.S. currency,

11  which was to be used to purchase the cocaine, is that

12  correct, sir?

13         THE DEFENDANT:  Yes.

14         THE COURT:  And is it further true that rather

15  take possession of the entire amount of the cocaine in one

16  transfer, you and your co-defendants, Wedding and Krapchan,

17  agreed that the cocaine purchase would occur over the span

18  of several smaller transfers, is that correct, sir?

19         THE DEFENDANT:  Yes.

20         THE COURT:  And you and your co-defendants,

21  Wedding and Krapchan, further agreed that Mr. Krapchan would

22  be provided with the required amount of U.S. currency to

23  conduct the actual individual transfers while you and your

24  co-defendant Wedding waited for the transfer to occur at a

25  separate location?

15

1          THE DEFENDANT:  Yes.

2          THE COURT:  And is it further true that in

3  furtherance of the conspiracy on June 13, 2008, you and your

4  co-defendants, Wedding and Krapchan, further agreed that the

5  cocaine would be transferred and delivered from the Southern

6  District of California to other individuals for the purpose

7  of distribution?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And is further true that in

10  furtherance of this conspiracy on June 13, 2008, within the

11  Southern District of California, you and your co-defendant

12  Wedding provided Mr. Krapchan with the first installment of

13  $17,000 in U.S. currency for the purpose of purchasing the

14  initial sample of cocaine?

15          THE DEFENDANT:  Yes.

16          THE COURT:  And is further true that while you and

17  co-defendant Wedding waited at Mr. Krapchan's hotel room

18  your co-defendant Krapchan exchanged the U.S. currency for

19  one kilo of cocaine?

20          THE DEFENDANT:  Yes.

21          THE COURT:  And the cash was given to your co-

22  defendant Krapchan that was sufficient to purchase seven

23  kilos of cocaine, is that correct, sir?

24          THE DEFENDANT:  It is.

25          THE COURT:  And is further true that the U.S.

16

1  currency described in the indictment was used to facilitate

2  the conducting of the illegal act to which you are pleading

3  guilty specifically that you possessed the U.S. currency for

4  the purpose of purchasing cocaine for distribution, is that

5  correct, sir?

6           THE DEFENDANT:  Yes.

7           MR. GUTIERREZ:  Your Honor.

8           THE COURT:  Yes.

9           MR. GUTIERREZ:  Given that this case is going to

10 go to trial relative to the two co-defendants, I would ask

11 the Court's permission on page five paragraph four the last

12 sentence where it says, "The cash given to the co-defendant

13 Krapchan ..."

14           THE COURT: Yes.

15           MR. GUTIERREZ:  Would the Court allow me to

16 interlineate, "... the cash to be given to co-defendant

17 Krapchan?"

18           MR. WARWICK:  No objection.  That would be

19 factual, your Honor.

20           THE COURT:  All right.  Then let me ask again of

21 Mr. Shirani, is it true that the cash to be given to your

22 co-defendant, Krapchan, was sufficient to purchase seven

23 kilos of cocaine, sir?

24           THE DEFENDANT:  Yes.

25           THE COURT:  And you understand and agree to the

17

1  criminal forfeiture of the following assets approximately

2  $100,000 in U.S. currency seized on June 15, 2008 from the

3  Comfort Inn, room 304, Ventura Boulevard in Woodland Hills,

4  California?

5            THE DEFENDANT:  Yes.

6            THE COURT:  And approximately $1,570 in U.S.

7  currency seized from you on June 13, 2008?

8            THE DEFENDANT:  Yes.

9            THE COURT:  And approximately $17,000 in U.S.

10 currency seized on June 13, 2008?

11           THE DEFENDANT:  Yes.

12           THE COURT:  And you further agree you will not

13 contest or assist any other person in contesting the

14 criminal forfeiture of the following assets from your co-

15 conspirators approximately $125 in U.S. currency seized from

16 co-conspirator Michael Krapchan on June 13, 2008.  Is that

17 correct, sir?

18           THE DEFENDANT:  Yes.

19           THE COURT:  And approximately $3,000 in U.S.

20 currency seized from your co-conspirator Ryan Wedding on

21 June 13, 2008?

22           THE DEFENDANT:  Yes.

23           THE COURT:  Is the Assistant United States

24 Attorney satisfied with the factual basis as to Mr. Shirani?

25           MR. GUTIERREZ:  Yes, your Honor, thank you very

18

1 much.

2      (Pause while the Court heard other matters.)

3           THE COURT:  And, counsel, is each of your client's

4 pleas made voluntarily and with your concurrence?

5           MR. WARWICK:  Yes, as to both of them.

6      (Pause while the Court heard other matters.)

7           THE COURT:  All right, Mr. Perrault, would you

8 please now rearraign each of these gentlemen.

9           THE CLERK:  Yes, your Honor.  Now that you've each

10 been advised of your rights, the charges against you and the

11 possible sentence, as to Mr. Shirani, how do you now plead

12 to count one of the indictment guilty or not guilty?

13           THE DEFENDANT:  Guilty.

14      (Pause while the Court heard other matters.)

15           THE COURT:  This Court finds that each of the

16 Defendants' guilty pleas is made knowingly and voluntarily

17 and with a full understanding of the nature of the charge,

18 the Defendants' rights and the consequences of the plea and

19 that there is a factual basis for each of these pleas.  I

20 will therefore recommend that the district judge accept each

21 of your pleas.

22           And for Mr. Shirani, I'm going to place your

23 sentencing hearing on the calendar of Judge Miller on

24 November 7 at 9:00 o'clock in the morning.  And I will

25 exclude time between today's date and November 7 on the

19

1   ground that Judge Miller will be considering your tendered

2   guilty plea.

3        (Pause while the Court heard other matters.)

4            THE COURT:  Now I need to vacate the dates as to

5   Mr. Shirani only?

6            MR. GUTIERREZ:  Yes, your Honor, please.

7            THE COURT:  All right.  So the trial date as to

8   Mr. Shirani will be vacated and only as to Mr. Shirani.  Are

9   there any other dates, motion dates?

10           MR. GUTIERREZ:  Yes, your Honor.

11           THE COURT:  And all motion dates.

12       (Pause while the Court heard other matters.)

13           THE COURT:  Thank you ladies and gentlemen.

14           MR. GUTIERREZ:  Thank you, your Honor.

15           MR. WARWICK:  Thank you, your Honor.

16           THE COURT:  You're welcome

17       (Proceedings concluded.)

18

19

20

21

22

23

24

25

20

1          I certify that the foregoing is a correct

2    transcript from the electronic sound recording of the

3    proceedings in the above-entitled matter.

4

5    /s/L.L. Francisco            7/23/09
     Transcriber                  Date

6

     FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

7
     /s/L.L. Francisco
8    L. L. Francisco, President
     Echo Reporting, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*