KAREN P. HEWITT
United States Attorney
Orlando B. Gutierrez
Assistant United States Attorney
California Bar No. 183745
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-2968/(619)557-3445(Fax)
Email: orlando.gutierrez@usdoj.gov

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR2386-JM |
| Plaintiff, | ) | |
| v. | ) | GOVERNMENT'S TRIAL MEMORANDUM |
| RYAN WEDDING, | ) | |
| Defendant. | ) | Date: November 16, 2009<br>Time: 9:00 a.m.<br>Honorable: Judge Jeffrey T. Miller<br>Courtroom: 16 |

The UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, Orlando B. Gutierrez, Assistant United States Attorney, hereby files the Government's Trial Memorandum.

//

//

//

//

//

//

//

//

# I

## STATEMENT OF THE CASE

### A. INDICTMENT

On July 18, 2008, a federal grand jury in the Southern District of California returned a one-count Indictment charging Defendant with: Conspiracy to Distribute Cocaine, in violation of Title 21, U.S.C., secs. 841(a)(1) and 846, and Criminal Forfeiture, in violation of Title 21, U.S.C., sec. 853. Defendant was arraigned on July 22, 2008, and entered a not guilty plea.

### B. TRIAL STATUS

Trial is scheduled for Monday, November 16, 2008, at 9:00 a.m., before the Honorable Jeffrey T. Miller, United States District Judge. The Government anticipates that its case-in-chief will last two days.

### C. STATUS OF COUNSEL

Defendant is represented by David R. Denis, Esq., Law Offices of David R. Denis, PC.

### D. CUSTODY STATUS

Defendant is in custody.

### E. INTERPRETER

The Government will utilize the services of a Russian interpreter for one of its witnesses.

### F. JURY WAIVER

Defendant has not filed a jury waiver.

### G. PRETRIAL MOTIONS

The following represents the government's understanding of Court's rulings so far. On March 13, 2009, the court ruled on the following motion:

| | Motion | Ruling |
|---|---|---|
| 1. | Motion for Discovery for Disclosure of Grand Jury Transcripts and to Produce Confidential Informant | Denied w/o prejudice |

On August 3, 2009, the court will rule on the following pretrial motions:

/ /

/ /

/ /

| | | |
|---|---|---|
| 1. | Motion to Suppress and Request for Franks Hearing | Denied |
| 2. | Motion to Dismiss Indictment for Outrageous Government Misconduct | Denied |
| 3. | Motion to Suppress Evidence from Unlawful Arrest | Denied |
| 4. | Motion to Exclude Evidence 1 through 13 | Denied in Part, Deferred in Part |
| 5. | Motion to Quash | Pending |
| 6. | Motion to Preclude defense of Entrapment | Pending |
| 7. | Preclude Defense of Pre-Trial Proceedings | Moot |
| 8. | Preclude expert testimony | Pending |
| 9. | Ex Parte Motion to Dismiss and for sanctions | Pending |

**H. <u>MOTIONS IN LIMINE</u>**

| | | |
|---|---|---|
| 1. | Preclude Evidence of Punishment and Background; | Moot |
| 2. | Preclude Self-Serving Hearsay; | Deferred |
| 3. | Preclude Evidence of Lack of Record; | Granted |
| 4. | Preclude Introduction of Defendant's Lack of Criminal History; | Granted |
| 5. | Limit Scope of Questioning of Confidential Informant; | Moot |
| 6. | Permit Expert Testimony; | Moot pending stip. |
| 7. | Preclude Inappropriate and Irrelevant Character Evidence; and | Granted |
| 8. | Preclude Inappropriate and Irrelevant Evidence of Third Party Acts. | Deferred |

/ /

/ /

/ /

/ /

/ /

**I. STIPULATIONS**

Although stipulations have been proposed, the parties have not entered into any stipulations.

**J. DISCOVERY**

The Government has complied with its discovery obligations. To date the government has supplied 2694 printed pages of discovery, 8 DVD'a and 49 compact discs. As of this date, the Defendant has not produced any discovery.

**II**

**STATEMENT OF THE FACTS**

The Federal Bureau of Investigation ("FBI") has been investigating the money laundering and drug distribution activities of Elmar Akhundov ("AKHUNDOV") and Michael Krapchan ("KRAPCHAN"). As described in greater detail below, Hassan Shirani ("SHIRANI") and Ryan Wedding ("WEDDING") are drug trafficking associates of AKHUNDOV and KRAPCHAN.

**A. Investigative Background-Money Laundering**

On January 3, 2007, Confidential Source of Information ("CS-1") was contacted by KRAPCHAN. KRAPCHAN stated that he and his associates were looking for someone to launder money for their organization and to possibly traffic in cocaine, ecstasy and ephedrine. KRAPCHAN later introduced CS-1 to AKHUNDOV.

KRAPCHAN proposed that CS-1 initially launder $100,000.00 to gain their [AKHUNDOV and KRAPCHAN's] trust and eventually CS-1 would be given $1,000,000.00 per week. During recorded telephone conversations between KRAPCHAN and CS-1, KRAPCHAN explained that the laundered funds resulted from drug trafficking activities.

**B. Drug Transaction**

During the months prior to June 13, 2008, CS-1 met with AKHUNDOV and KRAPCHAN regarding the purchase of cocaine. These negotiations were recorded and occurred over the telephone and in person, in locations that included, but were not limited to, Seattle, Washington and San Diego, California. Specifically, on May 20, 2008, over a recorded telephone conversation between CS-1 and KRAPCHAN, KRAPCHAN told CS-1 that they [KRAPCHAN and AKHUNDOV] distributed approximately "twenty kilos a week." KRAPCHAN also stated that they [KRAPCHAN and AKHUNDOV] were "looking at 24" [wanting to buy 24 kilograms of cocaine]. CS-1 assured

KRAPCHAN that the cocaine was, "100% Columbian." Ultimately KRAPCHAN and AKHUNDOV agreed to travel to San Diego, California on or about June 9, 2008 to purchase 24 kilograms of cocaine from CS-1.

On June 3, 2008, over a recorded conversation between KRAPCHAN and CS-1, KRAPCHAN confirmed that the order was for 24 kilograms and that he [KRAPCHAN] would like the deal to occur two kilograms at a time. Again, on June 5, 2008, KRAPCHAN again confirmed the order was for "24." During this call, KRAPCHAN again articulated his desire to purchase the cocaine in several smaller transfers, suggesting "5,5,5,5,4." On the same day, over two separate recorded conversations, KRAPCHAN confirmed that the final order would be for "24."

On June 5, 2008, over a recorded conversation between KRAPCHAN and CS-1, KRAPCHAN told CS-1 that he [KRAPCHAN ] will be in San Diego with two other individuals; a "Canadian athlete" and an "Iranian." KRAPCHAN explained to CS-1 that the money will be in Los Angeles and that the other two individuals would "stay in a different hotel room."

On June 5, 2008, over a recorded conversation between KRAPCHAN and CS-1, KRAPCHAN told CS-1 that the aforementioned Canadian athlete and the Iranian must fly into Los Angeles because that is where the money is located.

As did KRAPCHAN, SHIRANI and WEDDING traveled to Southern California from Canada. On June 10, 2008, KRAPCHAN introduced CS-1 to SHIRANI. During recorded conversations between KRAPCHAN, SHIRANI, WEDDING and CS-1, SHIRANI and WEDDING both explained to CS-1 that the buy-money was not instantly available upon their arrival at the Los Angeles International Airport.

Specifically, WEDDING told CS-1 that they [WEDDING and SHIRANI] understood that the "deal" [drug transaction] would not occur in Los Angeles, but that is where the "paper" [buy money] was located. WEDDING explained that if they [WEDDING and SHIRANI] had known that the "deal" would occur immediately upon arrival they would have arrived a few days earlier. WEDDING stated that the money was in Los Angeles waiting for "us" [WEDDING and SHIRANI], but that they just had to pick it up. WEDDING then stated, "Obviously, I didn't put "it" [the buy money] in my [unintelligible expletive] suitcase."

/ /

WEDDING also stated that their [WEDDING and SHIRANI's] intention was to "grab one" [kilogram of cocaine] and "have a look at it . . . and grab the rest of them later." SHIRANI subsequently stated that "[W]e [WEDDING and SHIRANI] cannot carry money over the border" and stated that they had to get the money to Los Angels before they [WEDDING and SHIRANI] arrived in Los Angeles.

On June 11, 2008, during a recorded telephone conversation between SHIRANI and CS-1, SHIRANI described how he intended the pending drug transaction to occur. SHIRANI stated that he would give CS-1 money for "two" [kilograms of cocaine]. SHIRANI explained that once the transfer for "two" was completed then they would do another "two." SHIRANI then stated that the first transfer would be for one "car" [kilogram of cocaine] so that he [SHIRANI] can inspect the "car" [cocaine] and see if it met his expectations. Ultimately, the parties agreed to conduct the exchange on June 13, 2008.

On June 13, 2008, FBI agents observed KRAPCHAN, SHIRANI, and WEDDING arrive together at a San Diego Hampton Inn hotel while driving in a 2008 Toyota Prius (Cal Lic. # 6DCW983). This vehicle was rented by WEDDING. KRAPCHAN, SHIRANI and WEDDING entered the hotel together. A short time later, using the aforementioned Toyota, Prius, KRAPCHAN left the San Diego Hampton Inn Hotel and traveled alone to a predetermined location where the previously negotiated drug transaction was to occur. Upon arrival, CS-1 met with KRAPCHAN, whereupon KRAPCHAN exchanged seventeen-thousand dollars for one kilogram of cocaine. After the exchange took place, CS-1 asked KRAPCHAN to call and inform SHIRANI and WEDDING that the exchange did, in fact, take place as previously negotiated. Using his cellular telephone, KRAPCHAN placed a call to SHIRANI and WEDDING and stated that he [CS-1]had in fact received the "cocaine" from CS-1. After making this telephone call, KRAPCHAN was placed under arrest.

After KRAPCHAN was arrested, SHIRANI and WEDDING were placed under arrest as they were leaving the San Diego Hampton Inn hotel. During a subsequent search of the aforementioned Toyota, Prius agents located *inter alia*:

1) a credit card type hotel key for Comfort Inn with the number "304" written upon it;

/ /

/ /

2) a vehicle rental agreement in the name of "Ryan Wedding" with SHIRANI's signature listing SHIRANI as an additional driver; and

3) a real estate magazine for the San Fernando Valley area.

The management at the Comfort Inn located at 20157 Ventura Boulevard, Woodland Hills, CA 91364, confirmed that room #304 was registered to WEDDING.

Pursuant to a search warrant issued in the Central District of California, agents from the FBI searched Room #304. Hidden within a piece of the hotel room's furniture, agents located approximately $100,000.00 of United States currency.

**III**

**PERTINENT LAW**

1. **Elements of the Distribution Conspiracy -** 21 U.S.C. §§ 841(a)(1) and 846

In order to convict the defendant of a conspiracy to distribute cocaine under 21 U.S.C. §§ 846 and 841(a)(1), the Government must prove two elements beyond a reasonable doubt:

(1) there was an agreement between at least two persons to possess cocaine with intent to distribute, and

(2) defendant became a member of the conspiracy knowing of one of its objects and intending to help accomplish it.

See 9th CIR. CRIM. JURY INSTR. 9.4.3.

**IV**

**WITNESSES**

The United States reserves the right to add, omit, substitute or change the order of the following proposed witnesses. Presently, the United States intends to call the following witnesses during its case-in-chief:

1. Bret Kalina, FBI, Special Agent;
2. Natalie Lambert, FBI, Special Agent;
3. Peter Casey, FBI, Special Agent;
4. Scott Peterson, FBI Special Agent;

/ /

5. Anne Schultz, FBI Special Agent;
6. David Spears, Senior Special Agent;
7. David Goddard, Royal Canadian Mounted Police;
8. Harry Skinner, DEA Forensic Chemist;
9. Amy Harmon, DEA Forensic Chemist;
10. Hasan Shirani, Co-defendant;
11. An individual previously identified as CS-1;
12. Oleksandra Johnson, Russian language expert.

## V

## EXHIBIT LIST

The United States will provide an exhibit list on the morning of trial. The seized evidence has been available for inspection since the date the charges were filed. The Government will make its trial exhibits available to Defendant for examination in advance of trial. The Government also requests an opportunity to examine Defendant's exhibits before trial.

## VII

## PROPOSED VOIR DIRE

1. Does everyone understand that as a juror you are not to consider prejudice, pity or sympathy in deciding whether Defendant is guilty or not guilty?
2. Does anyone think that, regardless of the strength of the evidence, he/she will have trouble deciding whether Defendant is guilty or not guilty?
3. Does anyone think he/she cannot decide whether a person is guilty or not guilty?
4. Does everyone understand that as a juror your duty is to apply the law regardless of whether you disagree with it?
5. Have you or a member of your family or someone close to you been affected by drug use?
6. Do you or a member of your family or someone close yo you have strong feelings or opinions about U.S. narcotics laws? Would these opinions prevent you from viewing the evidence impartially?

7. Are you or a member of your family or someone close to you involved in law enforcement? Explain?

8. Have you or a member of your family or someone close to you had what could be fairly characterized as a negative experience with law enforcement? Explain?

9. This case will involve individuals who have provided assistance to the government relative to the investigation and prosecution of the charged criminal conduct. Does anyone have any issues with witnesses who, for whatever reason, decided to cooperate with the government? Explain?

10. This case will involve individuals who are members of different ethnic and national backgrounds. One witness originally lived and resided in the former Soviet Union; a region now known as Kazakhstan. This witness will testify in Russian. Another witness is a Canadian national who is of Iranian national decent. This witness spoke Farsi during the course fo the investigation. Do any of you have any issues regarding witnesses who are from the former Soviet Union, Canada or Iran? Explain? Do any of you have any issues with a witness who speaks Farsi? Further, do any of you have any issues with a witnesses testifying *via* an interpreter; in this case a Russian interpreter?

**VIII**

**JURY INSTRUCTIONS**

The United States will submit proposed jury instructions under separate cover.

Dated: October 25, 2009.

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

/S/ Orlando B. Gutierrez
Orlando B. Gutierrez
Assistant United States Attorney
Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. RYAN WEDDING, Defendant. | Criminal Case No. 08CR2386-JM **CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

I, Orlando B. Gutierrez, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S TRIAL MEMORANDUM** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them: **David R. Denis, Esq., Law Offices of David R. Denis, AttyDenis@aol.com**.

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case: **None**.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 25, 2009.

s/ Orlando Gutierrez

Orlando B. Gutierrez